Opinion issued July 16, 2009





 





In The

Court of Appeals

For The

First District of Texas






NO. 01-09-00205-CV






M.H., Appellant


V.


THE STATE OF TEXAS FOR THE BEST INTEREST AND PROTECTION
OF M.H., Appellee






On Appeal from the County Court at Law

Cherokee County, Texas

Trial Court Cause No. 37240






MEMORANDUM OPINION


 Appellant M.H. appeals a trial court order authorizing the administration of
psychoactive medications to her. In two issues, M.H. argues that the evidence
presented at the hearing was legally and factually insufficient to sustain the trial
court's order. 

 We affirm the judgment of the trial court. 

Background

 M.H. was involuntarily committed to the Rusk State Hospital for Bipolar I
disorder with severe manic and psychotic features. Dr. Larry Hawkins, M.H.'s
treating physician, reviewed M.H.'s medical records and found that M.H. had 
previously used the following classes of medications: anti-depressants, anti-psychotics, mood stabilizers, and sedatives. He also found that M.H.'s symptoms
improved after she used the medications. Dr. Hawkins twice attempted to discuss the 
proposed treatment with M.H., but she refused to allow him to administer it. He filed
an application with the trial court to authorize him to administer the proposed
treatment. 

 The trial court hearing on the application began on January 27, 2009. At the
hearing, the State presented testimony from Dr. Hawkins. Dr. Hawkins testified that
the proposed treatment was in M.H.'s best interest and that she lacked the capacity
to make a decision regarding administration of psychoactive medications. He
testified that M.H. has a "very manic illness, and the mania itself has some
grandiosity and hyper-religious character to it." M.H. was arrested because she
caused a public disturbance at a convenience store by loudly preaching at customers. 
After the public disturbance, police took M.H. to a hospital. M.H. was transferred
and committed to Rusk State Hospital. 

 Dr. Hawkins testified that M.H. told him she had a religious objection to the
proposed treatment. She told Dr. Hawkins that she is a Jehovah's Witness and that
the proposed treatment conflicts with Witness doctrine. Dr. Hawkins testified that
M.H. was inconsistent in her religious objections to the medications, however,
because she allowed him to administer psychoactive medications to help her sleep. 
He also testified that M.H. is "verbally aggressive." Also, she is a danger to herself
because she incites other people to potential violence, due to her verbal aggression. 
As Dr. Hawkins was testifying, M.H. exclaimed that his testimony was "all
documented lies." Dr. Hawkins then testified that, on January 26, 2009, M.H.
participated in a Bible discussion with other Rusk patients and created a disturbance
during the discussion. M.H. then exclaimed that Dr. Hawkins had "just grieved the
holy spirit. He just took it to Jehovah."

 On cross-examination, M.H.'s attorney asked Dr. Hawkins if M.H. "indicated
to you that she is a Native American" and that "in the culture in which she was raised,
natural remedies were used as an alternative to medications." Dr. Hawkins testified
that M.H. did not indicate to him that her ethnic background was Native American
and that her background had influenced her decision to refuse the proposed treatment. 
Dr. Hawkins testified that M.H. proposed that he administer natural remedies instead
of the psychoactive medications. He stated that "natural remedies don't help mania"
and that the proposed treatment would help M.H.'s manic episodes. Dr. Hawkins also
testified that he was unable to discuss the risks and benefits of the medications with
M.H. because "she becomes quite agitated." During his testimony, M.H. interjected
that she was not manic, psychotic, or delusional. She stated that Dr. Hawkins'
treatment was "medical malpractice and insurance fraud." M.H. also stated that the
trial court was "guilty of grieving the holy spirit" and that she would appeal the trial
court's order to the supreme court. The trial court ordered that M.H. be removed
from the courtroom. M.H. did not testify at the hearing. The trial court issued an
order authorizing administration of psychoactive medications. M.H. gave notice of
appeal.

Legal and Factual Sufficiency of the Evidence M.H. does not contest the trial court's order that she receive inpatient mental
health services. She challenges only a subsequent trial court order authorizing the
administration of psychoactive medications. She argues in two issues that the
evidence is legally and factually insufficient to show by clear and convincing
evidence either that she lacked the capacity to make a decision regarding the
administration of the proposed medication or that the proposed medication plan was
in her best interest. 


 Standard of Review

 In a legal sufficiency review when the burden of proof is clear and convincing
evidence, the court should look at all the evidence in the light most favorable to the
finding to determine whether a reasonable trier of fact could have formed a firm belief
or conviction that its finding was true. In re J.F.C., 96 S.W.3d 256, 266 (Tex. 2002);
see also State v. Addington, 588 S.W.2d 569, 570 (Tex. 1979) ("Clear and convincing
evidence is defined as that measure or degree of proof that will produce in mind of
the trier of fact firm belief or conviction as to truth of allegations sought to be
established"); State ex rel. E.G., 249 S.W.3d 728, 730-31 (Tex. App.--Tyler 2008,
no pet.). Looking at the evidence in the light most favorable to the judgment means
that we must assume that the fact finder resolved disputed facts in favor of its finding
if a reasonable fact finder could do so. In re J.F.C. 96 S.W.3d at 266. We should
disregard all evidence that a reasonable fact finder could have disbelieved or found
to have been incredible. Id. If, after conducting a legal sufficiency review, we
determine that no reasonable fact finder could have formed a firm belief or conviction
that the matter to be proven was true, we must conclude that the evidence is legally
insufficient. Id. 

 In a factual sufficiency review, we must give due consideration to evidence that
the fact finder could reasonably have found to be clear and convincing. Id. [T]he
inquiry must be "whether the evidence is such that a fact finder could reasonably form
a firm belief or conviction about the truth of the State's allegations." Id. (quoting In
re C.H., 89 S.W.3d 17, 25 (Tex. 2002)). We should consider whether disputed
evidence is such that no reasonable fact finder could have resolved the disputed
evidence in favor of the finding. Id. If, in light of the entire record, the disputed
evidence that no reasonable fact finder could have credited in favor of the finding is
so significant that a fact finder could not reasonably have formed a firm belief or
conviction about the truth of the State's allegations, then the evidence is factually
insufficient. Id. We should detail in our opinion why we conclude that a reasonable
fact finder could not have credited disputed evidence in favor of the finding. Id. at
266-67. 

 Texas Health and Safety Code Section 574.106

 Texas Health and Safety Code section 574.106 states, in relevant part:

 (a) The court may issue an order authorizing the administration of
one or more classes of psychoactive medication to a patient who:


 (1) is under a court order to receive inpatient mental health
services; (1) or


 (2) is in custody awaiting trial in a criminal proceeding and
was ordered to receive inpatient mental health services in
the six months preceding a hearing under this section.


 (a-1) The court may issue an order under this section only if the court
finds by clear and convincing evidence after the hearing:


 (1) that the patient lacks the capacity to make a decision
regarding the administration of the proposed medication
and treatment with the proposed medication is in the best
interest of the patient; or


 (2) if the patient was ordered to receive inpatient mental health
services by a criminal court with jurisdiction over the
patient, that:


 (A) the patient presents a danger to the patient or others
in the inpatient mental health facility in which the
patient is being treated as a result of a mental
disorder or mental defect as determined under
Section 574. 1065; (2) and


 (B) treatment with the proposed medication is in the best
interest of the patient.


 (b) In making the finding that treatment with the proposed
medication is in the best interest of the patient, the court shall
consider:


 (1) the patient's expressed preferences regarding treatment
with psychoactive medication;


 (2) the patient's religious beliefs;


 (3) the risks and benefits, from the perspective of the patient,
of taking psychoactive medication;


 (4) the consequences to the patient if the psychoactive
medication is not administered;


 (5) the prognosis for the patient if the patient is treated with
psychoactive medication;

 

 (6) alternative, less intrusive treatments that are likely to
produce the same results as treatment with psychoactive
medication; and


 (7) less intrusive treatments likely to secure the patient's
agreement to take the psychoactive medication.


Tex. Health & Safety Code Ann. § 574.106 (Vernon Supp. 2008). 
 Capacity to Make Decision

 M.H. argues that the State failed to prove by clear and convincing evidence that
she did not have the capacity to make a decision regarding the administration of the
proposed medication as required by section 574.106 (a-1)(1). She argues that her
ability to state her name during the court proceedings indicates "an awareness of her
situation as well as an ability to express her preferences and make a decision whether
to undergo the proposed treatment." She also argues that the State's expert, Dr.
Hawkins, failed to explain why he determined that M.H. lacked the capacity to make
a decision regarding her medication. 

 Capacity in this context means the patient's ability to understand the nature and
consequences of a proposed treatment, including the benefits, risks, and alternatives
therefrom, and to make a decision whether to undergo that treatment. Tex. Health
and Safety Code Ann. § 574.101(1)(A), (B) (Vernon 2003); see In re C.S., 208
S.W.3d 77, 84 (Tex. App.--Fort Worth 2006, pet. denied) (holding evidence legally
sufficient to establish that patient lacked capacity to make decision regarding
administration of proposed medications and that treatment with proposed medications
was in her best interest, so as to authorize administration of psychoactive
medications, when physician testified that while on medications patient did not
require restraint and could be put in less restrictive setting, that patient suffered from
delusions, that if treated with medication she might benefit from better quality of life,
that her prognosis under treatment was positive, and that alternative to proposed
treatment was electroconvulsive therapy); State ex rel. T.M., No. 12-05-00389, 2006
WL 1419416 , at *4 (Tex. App.--Tyler May 24, 2006, no pet.) (holding evidence
factually sufficient to support trial court order authorizing administration of
psychoactive medication when evidence of alleged mentally ill individual's belief that
he did not need psychoactive medication and his religious preferences was not so
significant that reasonable trier of fact could not have reconciled evidence in favor
of its finding and formed firm belief or conviction that alleged mentally ill person
lacked capacity to make decision regarding administration of proposed psychoactive
medications and that proposed medications were in his best interest).

 Here, the State's expert, Dr. Larry Hawkins, testified that he was M.H.'s
treating physician. He testified that M.H. refused to take her medication because "she
lacks the capacity to make a rational decision" regarding the proposed treatment of
psychoactive medication. He testified that M.H. suffers from "Biopolar I, manic,
severe, with psychotic features." He stated that when he initially attempted to discuss
the proposed treatment with M.H., she told him that she could not take the medication
due to her religious beliefs. M.H. claimed that she was a Jehovah's Witness and that
the proposed treatment was inconsistent with Witness doctrine. However, Dr.
Hawkins testified that hyper-religiosity is a feature of M.H.'s mental illness. Dr.
Hawkins further testified that M.H. had been arrested because of a public disturbance
she caused due to verbal aggression related to her behavior. 

 Dr. Hawkins further testified that M.H. is a danger to herself because her verbal
aggression creates potentially violent responses from other people. He testified that
M.H. has used the proposed treatment of medications previously and that the
treatment had previously "[given] her the chance to become more well and in
remission of her symptoms and her illness." He also testified that M.H.'s proposed
alternative of "natural remedies" was ineffective. 

 On cross-examination, Dr. Hawkins testified that M.H. decided to take
psychoactive medication for sleep. He also testified that he was unaware of her
ethnic background as a Native American and its influence on her decision to take
natural remedies rather than psychoactive medications. 

 Considering all the evidence in the light most favorable to the findings, we
conclude that the evidence was legally sufficient to allow a reasonable fact finder to
form a firm belief or conviction that M.H. lacked the capacity to make a decision
regarding a proposed treatment of psychoactive medications. See Tex. Health &
Safety Code Ann. § 574.106; In re J.F.C., 96 S.W.3d at 266; State ex rel. T.M.,
2006 WL 1419416, at *3. Because M.H. presented no evidence disputing that she
had lacked the capacity to make a decision regarding the proposed treatment, we
conclude that the evidence was also factually sufficient to allow a fact finder to form
a firm belief or conviction that appellant lacked capacity to make a decision. In re
J.F.C., 96 S.W.3d at 266; State ex rel. T.M., 2006 WL 1419416 , at *4. 

 Best Interest of the Patient

 M.H. also contends that the evidence presented at trial was legally and factually
insufficient to prove that the proposed treatment with psychoactive medications was
in her best interest. She argues that the trial court failed to consider her stated
preferences, her religious beliefs, and the risks and benefits of the proposed treatment.
See Tex. Health & Safety Code Ann. § 574.106(b)(1), (2), (3).

 Here, the proposed treatment included the following classes of psychoactive
medications: anti-depressants, anti-psychotics, mood stabilizers, and sedatives. The
State's expert, Dr. Hawkins, presented testimony that M.H. had previously been
admitted to inpatient mental health care and had been prescribed the medications
proposed here. He testified that M.H. was discharged in a short period of time after
the psychoactive medications were administered to her. Dr. Hawkins also testified
that M.H.'s preferred treatment of natural remedies would be ineffective for her
condition and that M.H. was inconsistent about whether to use psychoactive
medications. M.H. had explained that her religious belief precluded her from using
psychoactive medications, but she had agreed to use a psychoactive medicine
designed as an aid for sleep. Dr. Hawkins testified that M.H. would benefit from the
proposed treatment of psychoactive medications because she would "stay exactly the
same as you see her right now" without the medications. He further testified that
there were no alternative medications or treatments for her Bipolar I disorder with
manic and psychotic features.

 On cross-examination, Dr. Hawkins testified that, in her current state, M.H. is
a danger to herself because her verbal aggression may incite other people to harm her. 
M.H. presented no evidence to dispute Dr. Hawkins's testimony. Considering the
evidence in the light most favorable to the trial court order, we conclude that a
reasonable fact finder could have formed a firm belief that the proposed treatment
was in M.H.'s best interest. Tex. Health & Safety Code Ann. § 574.106; In re
J.F.C. 96 S.W.3d at 266; In the Matter of C.S., 208 S.W.3d at 84-85; State ex rel.
T.M., 2006 WL 1419416 , at *4. We hold, therefore, that the evidence presented at
the hearing was legally and factually sufficient to support the trial court's order. 

 We overrule M.H.'s two issues.

Conclusion

 We affirm the judgment of the trial court. 






 Evelyn V. Keyes

 Justice


Panel consists of Justices Keyes, Hanks, and Bland.

1. See Tex. Health & Safety Code Ann. § 574.022 (Vernon 2003). 
2. Texas Health and Safety Code section 574.1065 sets out factors the trial court must
consider when determining whether a patient receiving care in an inpatient mental
health facility is a danger to himself or others, including the following:


 (1) an assessment of the patient's present mental condition;


 (2) whether the patient has inflicted, attempted to inflict, or made a
serious threat of inflicting substantial physical harm to the
patient's self or to another while in the facility; and


 (3) whether the patient, in the six months preceding the date the
patient was placed in the facility, has inflicted, attempted to
inflict, or made a serious threat of inflicting substantial physical
harm to another that resulted in the patient being placed in the
facility. 

 

 Tex. Health & Safety Code Ann. § 574.1065 (Vernon Supp. 2008).